# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**BIG WILL ENTERPRISES INC.,**

       **Plaintiff,**

    **v.**

**GEOMETRIS LP,**

       **Defendant.**

**Case No. 4:25-cv-03961**

## DEFENDANT GEOMETRIS LP'S MOTION TO DISMISS FOR
## FAILURE TO STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW

## **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF RELEVANT FACTS .................................................... 1

     A.  The Tracking Patents ('558 and '273 Patents)................................. 2

     B.  The Reaction Patents ('914 and '951 Patents) ............................... 5

III.  LEGAL STANDARD.................................................................................. 8

IV.  ARGUMENT.............................................................................................. 9

     A.  The Tracking Patents are Ineligible ............................................... 10

        1.  Claim 1 of the '558 Patent is Representative of All Claims of the Tracking Patents ................................................................. 10

        2.  *Alice* Step One: Claim 1 of the '558 Patent is Directed to the Abstract Idea of Tracking the Movement of a Mobile Thing ................................................ 14

        3.  *Alice* Step Two: Claim 1 of the '558 Patent Contains No Inventive Concept Sufficient to Transform the Abstract Idea into Patentable Subject Matter ...... 17

     B.  The Reaction Patents are Ineligible ............................................... 19

        1.  Claim 1 of the '914 Patent is Representative of All Claims of the Reaction Patents ................................................................. 19

        2.  *Alice* Step One: Claim 1 of the '914 Patent is Directed to the Abstract Idea of Reacting to One's Surroundings.................. 21

        3.  *Alice* Step Two: Claim 1 of the '914 Patent Contains No Inventive Concept Sufficient to Transform the Abstract Idea into Patentable Subject Matter ...... 23

     C.  The Issue of Patent Eligibility is Ripe .......................................... 24

V.   CONCLUSION........................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)......................................................................12, 20

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ......................................................................... *passim*

*Profrac Holding Corp et al. v. Halliburton Energy Services Inc.*
  PGR2023-00023 (Oct. 29, 2024) ................................................................23

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)......................................................................13, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ...........................................................8

*Bancorp Servs. LLC v. Sun Life Assur. Co.*,
  687 F.3d 1266 (Fed. Cir. 2012)......................................................................25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................8

*Bilski v. Kappos*,
  561 U.S. 593 (2010).............................................................................8, 9, 24

*In re Board of Trustees of Leland Stanford Junior University*,
  989 F.3d 1367 (Fed. Cir. 2021)......................................................................11

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)......................................................................17, 24

*Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.*,
  2023 WL 4850567 (D. Del. 2023) .................................................................16

*CLS Bank Int'l v. Alice Corp. Pty.*,
  717 F.3d 1269 (Fed. Cir. 2013), *aff'd*, 573 U.S. 208 (2014) .......................20

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)......................................................................10, 25

*Cyber Source Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)......................................................................22

*Diamond v. Diehr*,
  450 U.S. 175 (1981)........................................................................................9, 18

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
  815 F. App'x 529 (Fed. Cir. 2020) .................................................................24

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  963 F.3d 1371 (Fed. Cir. 2020)......................................................................15

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  No. 16-CV-81677, 2020 WL 9440337 (S.D. Fla. Oct. 30, 2020)..........................15

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
  No. 9:16-cv-81677, Dkt. 74 (S.D. Fla. Oct. 30, 2020) ........................................15

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)......................................................................17

*Gottschalk v. Benson*,
  409 U.S. 63 (1972)........................................................................11, 13, 22

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
  2020 WL 13281800 (N.D. Tex. 2020)..............................................................17

*Intellectual Ventures I LLC v. Erie Indemnity Company*,
  850 F.3d 1315 (Fed. Cir. 2017)......................................................................11

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012)..............................................................................9, 18

*Panduit Corp. v. Dennison Mfg. Co.*,
  836 F.2d 1329 (Fed. Cir. 1987)...................................................................10, 11

*Parker v. Flook*,
  437 U.S. 584 (1978).......................................................................................9

*Phoenix Licensing, LLC v. Consumer Cellular, Inc.*,
  No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ............10

*PPS Data, LLC v. Jack Henry & Assocs.*,
  2019 WL 1317286 (E.D. Tex. 2019) ..........................................................14, 21

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
  404 F. Supp. 3d 1021 (E.D. Tex. 2019)...........................................................10

*Recentive Analytics, Inc. v. Fox Corp.*,
  134 F.4th 1205 (Fed. Cir. 2025) ....................................................................22

*In re Rudy*,
   656 F.3d at 1385 ...................................................................................................23

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)......................................................................14, 18

*Shipping & Transit, LLC v. Hall Enters., Inc.*,
   2017 WL 3485782 (C.D. Cal. July 5, 2017) ...................................................15, 16

*Simio, LLC v. Flexsim Software Prods.*,
   983 F.3d 1353 (Fed. Cir. 2020)............................................................................24

*Specialized Monitoring Sols., LLC v. ADT LLC*,
   367 F. Supp. 3d 575 (2019) ..................................................................................16

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)......................................8, 24

**Statutes**

35 U.S.C. § 101................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...............................................................................1, 8, 24

v

## I.  INTRODUCTION

The claims here are ineligible for patentability under 35 U.S.C. § 101. In particular, the claims in the '558 Patent and '273 Patent (the "Tracking Patents") are directed to the abstract idea of tracking the movement of a "mobile thing," and the claims in the '914 Patent and '951 Patent (the "Reaction Patents") are directed to the abstract idea of reacting to one's surroundings. The claims of all four patents are directed to abstract ideas and include no inventive concept or meaningful limitations that would amount to significantly more than the abstract idea. The asserted claims merely cobble together generic computer components that perform generic computations.

Nothing more is disclosed to warrant patent protection. The patents' claims do not improve computer component functionality or processes. They do not introduce new technology, sensors, or mobile devices. They do not disclose innovative technology to achieve the ideas or combine conventional technology in inventive ways. Rather, they simply claim the ideas of tracking the movement of a mobile thing or reacting to one's surroundings. These are not patent eligible.

Resolving patentability does not require discovery or formal claim construction. Therefore, to avoid waste of judicial and party resources unnecessarily litigating invalid patents, Geometris requests that the Court dismiss the Complaint with prejudice under Rule 12(b)(6).

## II.  STATEMENT OF RELEVANT FACTS

On August 20, 2025, Plaintiff Big Will Enterprises, Inc. filed this lawsuit against Defendant Geometris LP, alleging infringement of four patents: U.S. Pat. Nos. 9,049,558, 8,452,273, 8,559,914, and 8,737,951 (the "Asserted Patents"). In its complaint, Plaintiff alleges Geometris infringes the Asserted Patents by manufacturing, using, selling, and offering for sale the Geometris whereQube OBD II trackers, which are devices for tracking and detecting drivers' behaviors.

**A.    The Tracking Patents ('558 and '273 Patents)**

The '558 Patent was filed on July 5, 2013. The patent is generally directed to "[s]ystems, apparatus, and methods . . . for accurately identifying a moving thing motion activity (MTMA) associated with a mobile thing (MT) using sensor data from one or more sensors." '558 Patent, Abstract. It consists of six independent claims and 54 dependent claims, all of which are directed to determining the motion of a mobile thing using sensors, data, and calculations.

The '273 Patent was filed on October 23, 2012, and is generally directed to "[s]ystems, apparatus, and methods . . . for accurately identifying a moving thing motion activity (MTMA) associated with a mobile thing (MT) using **only accelerometer data**." '273 Patent, Abstract (emphasis added); *compare* '558 Patent, Abstract. It consists of three independent claims and 20 dependent claims, all of which are directed to determining the motion of a mobile thing using accelerometers, data, and calculations.

The '558 Patent alleges that "[a]ctivity detection can be a problematic and difficult task" and the existing studies were unable to determine activity "with sufficient accuracy." *Id*. at 2:3-17.[1] The '558 Patent purports to solve this by detecting motion activity "using data from one or more sensors" (*e.g.*, an accelerometer) associated with a "mobile thing" (*e.g.*, a user's wireless phone) and performing computations (*e.g.*, applying a standard rotation matrix) to determine the mobile thing's movement (*e.g.*, the rotation of the wireless phone). *Id.* at 3:14-18; 3:20-21; 19:11-12; 21:61-22:13. The method disclosed by the '558 Patent consists of a series of generic steps.

The first step is "acquiring data from . . . one or more sensors" in a wireless communication device. *Id*. at 3:39-40. The sensors could be any sensor "designed to produce movement data,"

---

[1] The '588 and '273 Patents share the same inventors, are from the same patent family, and have substantially the same specifications. All citations to the Tracking Patents will be to the '558 Patent unless otherwise noted.

including "for example but not limited to, an accelerometer, a gyroscope, a magnetometer, a pressure sensor, a GPS receiver, a microphone, an altimeter, a heat sensor, a humidity sensor, barometer, gas sensor, air quality sensor, chemical sensor, radiation sensor (dosimeter), light sensor, proximity sensor, [or] etc." *Id.* at Abstract, 3:4-7; 4:60-67; 24:4-12. The sensors are associated with a wireless communication device—"a computer-based architecture with computer software" and "includes at least a processor(s)[], such as a microprocessor, a memory(ies) [], a transmitter(s) and perhaps a receiver(s)." *Id.* at 1:64-2:2; 3:27-31; 3:4-7; 24:4-6. In short, **any** generic sensor could be used to provide the conventional functionality of a sensor: sensing data.

The second step is performing "calculations" with the data. *Id.* at 20:26-29. The calculations are routine mathematical operations including "coordinat[ing] rotat[ions]," "perform[ing] . . . 'average/mean' and 'variance/SD,'" "root means square (RMS)," and "Fourier Transform[s]." *Id.* at 20:25-21:1. The '558 does not disclose any novel methods to conduct these mathematical operations or purport to invent a novel application of the operations.

The third step involves "determining the [mobile thing movement activity] based upon" the preceding calculations. *Id.* at 8:6-10; 8:40-49. The determination may follow a comparison to other reference data, *id.*, or from a single set of data, *id.* at 3:25-26; 4:1-4.

These basic steps are reflected in independent Claim 1 of the '558 Patent:

| Claim 1 | Step |
|---|---|
| A method, comprising: | N/A |
| receiving a time value and at least three streams of data sample values from one or more sensors of a wireless communication device (WCD) that is transported by a mobile thing (MT), each data sample value indicative of movement of the WCD at a corresponding time value; | 1. Receiving data |
| recognizing a particular set of data sample values as a reference for defining an orientation of the WCD in a coordinate system; computing reference data based upon the recognition of the particular set, the reference data defining a relationship between each set of subsequent non-reference data sample values and the particular reference set of data sample values in the coordinate system; | 2. Performing calculations with the data |

3

| | |
|---|---|
| calculating movement data in the coordinate system of one or more other non-reference data sample values based upon the reference data; and | |
| determining a mobile thing motion activity (MTMA) associated with the MT based upon the movement data. | 3. Determining movement activity |

The same is true of independent Claim 22 of the '273 Patent:

| Claim 22 | Step |
|---|---|
| A method, comprising: | N/A |
| receiving a time value and three streams of data sample values from an accelerometer of a wireless communication device (WCD) that is transported by a mobile thing (MT), each data sample value indicative of an acceleration of the WCD along an axis of a three dimensional (3D) coordinate system at a corresponding time value; | 1. Receiving data |
| computing reference data, the reference data defining a relationship between data sample values and a reference framework to enable comparison of 3D sets of data sample values;<br>calculating movement data for each set based upon the reference data; and | 2. Performing calculations with the data |
| determining a moving thing motion activity (MTMA) associated with the MT based upon the movement data. | 3. Determining movement activity |

The '558 Patent does not disclose any new technology to accomplish the claimed functions. Rather, it relies on generic computer components to achieve the functional end of tracking movement. For example, the patent lists 16 different types of sensors that could provide the data as nonlimiting examples. *Id.* at 24:4-12. Similarly, the wireless communication device transported by the "mobile thing" and containing the sensors could be anything with "computer-based architecture with computer software" or "software and/or hardware," including traditional computer components like "processor(s)[], such as a microprocessor, a memory (ies) [], a transmitter(s) and perhaps a receiver(s)." *Id.* at 6:1-7; 24:4-6. None of the components disclosed by the '558 Patent is new technology or even traditional technology operating in new or inventive ways. The claimed components are fully generic and used entirely for their conventional purposes.

4

### B.    The Reaction Patents ('914 and '951 Patents)

The '914 Patent was filed on January 16, 2009, and is generally directed to "automatically captur[ing] surveillance information, hav[ing] the information sent to one or more automated and remotely located surveillance (RLS) systems, and establish[ing] interactivity for the verification." '914 Patent, Abstract. It consists of three independent claims and 17 dependent claims, all of which are directed to reacting to one's surroundings.

The '951 Patent was filed on October 9, 2013, and is generally directed to "capturing and sending surveillance information . . . to one or more remotely located servers (RLSs)" and processing the information. '951 Patent, Abstract. It consists of two independent claims and eight dependent claims, all of which are directed to reacting to one's surroundings.

The '914 Patent explains that "individuals . . . would benefit from an [interactive personal surveillance and security] system" that "follow[ed] the user throughout the day" and "acted and reacted proactively." '914 Patent at 1:40–62.[2] It describes a system to meet these needs that "utilizes most, if not all of the same hardware they already have with them" through "software (or firmware) installed on a user's portable communication device (Cell Phone, Wireless PDA, etc.)." *Id* at 1:40–2:35. The system works by using a "wireless communication device such a cellular phone" to transmit information to a "Remotely Located Surveillance (RLS) system." *Id.* at 6:52–58. The surveillance system "receives the surveillance information and determines if any action is needed." *Id.* at 6:58–61. The system then initiates "[r]esponse modes" that may include "wait[ing] or communicat[ing] with . . . others." *Id.*; *see, e.g.*, *id.* at 11:8-18; 7:29-32; 3:19-23; 3:30-37. The method disclosed by the '914 Patent consists of a series of generic steps.

---

[2] The '951 and '914 Patents share an inventor, are from the same patent family, and have similar specifications. All citations to the Reaction Patents will be to the '914 Patent unless otherwise noted.

The first step is capturing "surveillance information" using "a user's portable communication device." *Id.* at Abstract, 2:28–41. The "portable communication device" can be any device, for example, a "Cell Phone, Wireless PDA, etc.," that is capable of gathering information, which may comprise "GPS, accelerometer (or other motion device), readings, time, camera (or video), and audio (among others)." *Id.*, *id.* at 6:52-55.

The second step involves analyzing the captured information. *Id.* at 3:17-32. The system receives the information and "determines" based on "user defined personal criteria" whether and how to respond. *Id.* The '914 patent is silent as to the computations or analysis used.

The third step includes the system responding in various ways depending on its determination in step 2. *See generally*, *id.* The system may, for example, communicate the information to a third party, 3:19-32, store the information, 9:3-5, or initiate an alarm, 3:32-34. The '914 patent does not disclose the mechanisms or processes that carry out these responses.

These basic steps are reflected in independent Claim 1 of the '914 Patent:

| Claim 1 | Step |
|---|---|
| An interactive personal security and surveillance system comprising: <br> at least one computing device; and <br> at least one application executable in the at least one computing device, the application comprising: | N/A |
| logic that determines a user activity and/or user surroundings . . . | 1. Capturing information |
| . . . by matching sensor data to at least one algorithm with at least one user-defined parameter; <br> logic that determines a surveillance mode that corresponds to the user activity and/or the user surroundings; . . . <br> logic that assigns a risk level associated with the user activity and/or the user surroundings; <br> logic that accesses a remote security database to determine the user surroundings; | 2. Analyzing the information |
| logic that facilitates a user-defined response to the user activity and/or the user surroundings; . . . <br> logic that composes a dynamic contact list based on the user activity and/or the user surroundings; | 3. Reacting to the information |

6

| | |
|---|---|
| logic that transmits surveillance information to a publicly searchable database; logic that communicates the surveillance information to at least one remotely located computer device; and logic that remotely stores the surveillance information. | |

The same is true of asserted Claim 10 of the '951 Patent:

| Claim 10 | Step |
|---|---|
| A wireless communications device (WCD), comprising: one or more memories that store computer program code; and one or more processors that execute the computer program code, the computer program code comprising: | N/A |
| instructions to produce data from one or more sensors associated with the WCD; | 1. Capturing information |
| instructions to determine a human body physical activity (HBPA) associated with a WCD user based upon the data; | 2. Analyzing the information |
| instructions to select a mode of operation from a set of modes, based upon the determined HBPA, the set including different modes of operation involving initiation of different investigation processes that capture different types of data; and instructions to communicate the data to a remote computer system | 3. Reacting to the information |

The '914 Patent does not disclose any new technology to accomplish the claimed functions. Rather, it relies on generic computer components to achieve the functional end of surveilling and reacting to one's surroundings. For example, the patent discloses a system that can be any "software (or firmware)" installed on a user's portable communication device." '914 Patent at 2:20-33. The portable communication itself can be any "Cell Phone, Wireless PDA, etc." that is "capable of gathering" information, ranging from "GPS, accelerometer (or other motion device) readings, time, camera (or video), and audio (among others)." *Id.* at 2:20-36. There is also a "remotely located server" disclosed in the patent, but that system is only limited by being "configured to communicate with and control alarm activations . . . from [the] portable communication device." *Id.* at 35-41. None of the components disclosed by the '914 Patent is new technology or even traditional technology operating in new or inventive ways. Like the Tracking Patents, the Reaction Patents claim generic components used for their conventional purposes.

Indeed, the Reaction Patents tout the ability to deploy components that a person would already have with them, like their cell phone, to practice the abstract idea to which they are directed.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim. To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

Although factual allegations are taken as true, legal conclusions are given no deference and are left for the court. *See Iqbal*, 556 U.S. at 678 (Tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions."). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citations and internal quotations omitted). Thus, "resolving subject matter eligibility at the outset provides a bulwark against vexatious infringement suits." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Abstract ideas are ineligible for patent protection because a monopoly over these ideas preempts their use in all fields. *See id.* at 611–12. Concluding a patent impermissibly claims an abstract idea involves two steps. First, courts determine whether the claims at issue are "directed to" an abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217–218 (2014). Second, if the claim is directed to an abstract idea, the court evaluates whether the patent discloses "an

'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (cleaned up). Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)) (cleaned up). A claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610-11; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978).

## IV.    ARGUMENT

The eligibility of the Tracking Patents' claims can be evaluated based on Claim 1 of the '558 Patent because it is representative of all claims of those patents. Similarly, eligibility of the Reaction Patents' claims can be evaluated from the perspective of Claim 1 of the '914 Patent because it is representative of all claims of those patents. Analysis of Claims 1 from the '558 and '914 Patents reveals that all claims of the Asserted Patents are invalid under § 101 because they fail both prongs of the *Alice* test: (1) the claims are directed to either the abstract idea of tracking the movement of a "mobile thing" or surveilling and reacting to a person's surroundings, and (2) the claims do not contain an "inventive concept . . . sufficient to ensure that the patents in practice amount to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–218 (internal quotation omitted). There are no factual disputes or claim construction issues to preclude the Court's determination at the 12(b)(6) stage, and the claims therefore should be invalidated for failure to claim patent eligible subject matter.

A.     The Tracking Patents are Ineligible

Because the Tracking Patents are directed to unpatentable subject matter, Plaintiff's

infringement claims should be dismissed.

1.     Claim 1 of the '558 Patent is Representative of All Claims of the Tracking Patents

When claims are "substantially similar and linked to the same abstract idea," courts may

look to representative claims during § 101 analysis. *Content Extraction and Transmission LLC v.*

*Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Such is the case here. Claim

1 of the '558 Patent is representative of all claims in the Tracking Patents. *See, e.g.*, *Alice*, 573

U.S. at 224–26 (invalidating over 200 claims from four patents based on two claims); *Phoenix*

*Licensing, LLC v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, *8–9

(E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only ten "representative claims"

where the other claims were "substantially similar" and "linked to the same abstract idea").

a.     The Independent Claims are Directed to the Abstract Idea

To begin, the independent claims of the Tracking Patents are directed to the same abstract

idea of tracking the movement of a mobile thing. *See PPS Data, LLC v. Jack Henry & Assocs.,*

*Inc.*, 404 F. Supp. 3d 1021, 1029–31 (E.D. Tex. 2019) (If Defendant demonstrates

representativeness, the court may treat the claim as representative and Plaintiffs bear the burden

of identifying a difference "tethered to the claim language" of "distinctive significance" material

to the § 101 analysis. (internal quotations omitted)); *see also Panduit Corp. v. Dennison Mfg. Co.*,

836 F.2d 1329, 1330 (Fed. Cir. 1987). Claim 1 of the '558 Patent recites a method for "determining

the moving thing motion activity . . . based upon the movement data." *See, e.g.*, '558 Patent at Cl.

1. This method contains the functionally recited steps of (1) receiving data from sensors (*e.g.*,

accelerometers); (2) performing calculations with the data (*e.g.*, "computing reference data" and

"calculating movement data"); and (3) from the calculations, determining movement activity of the mobile thing. *See* § II, *supra*.

Independent Claim 17 of the '558 Patent is a variant of Claim 1 that adds generic limitations—the claim collects only two sets of data from the sensors (instead of three, as Claim 1 does) and normalizes the data during the calculation step. In Claim 17, the method "receiv[es] a first and second data from one or more sensors." *See id.* at Cl. 17. Then, as part of the calculations, the method uses the first data to "determine[e] reference data," and "normalize[es] the second data with the reference data. *See id.* The additional limitation of "receiving a first and second data" to perform a routine mathematical operation on does not change that the claim is directed to performing an abstract idea on a generic computing device—actually, it reinforces this conclusion. *See, e.g.*, *Gottschalk v. Benson*, 409 U.S. 63, 72 (1972); *In re Board of Trustees of Leland Stanford Junior University*, 989 F.3d 1367, 1372–74 (Fed. Cir. 2021); *Intellectual Ventures I LLC v. Erie Indemnity Company*, 850 F.3d 1315, 1327-29 (Fed. Cir. 2017).

Independent Claim 27 of the '558 Patent is a variant of Claim 1 that merely expands the step of "receiving at least three streams of data" to "receiving a plurality of data samples." *See* '558 Patent at Cls. 17, 27. The method then "comput[es] reference data" as in Claim 17 in the calculations step. *Id.* While Claim 27 does not specifically cite a rote mathematical operation to perform this calculation, any such calculation would not be patentable. *Gottschalk*, 409 U.S. at 72; *In re Board of Trustees*, 989 F.3d at 1372–74.

Independent Claim 36 of the '558 Patent is a system applying the method of Claim 1. The system comprises nothing more than generic computer hardware, including "one or more memories designed to store computer program code" and "one or more processors." *See* '558 Patent at Cls. 36. The system receives "at least three streams of data sample values" (in the

11

language of Claim 27, a "plurality of data samples"), performs calculations to "compute reference data" from a data sample, performs calculations on the other data samples, and "determine[s] a mobile thing motion activity." *See id.* at Cls. 1, 36. Adding generic computer hardware does not remove the claim from the abstract, it enforces that the idea is unpatentable. *See Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) (affirming district court finding that "although the system claim associates certain computer components with some of the method steps, none of the recited hardware offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment'").

Independent Claim 42 of the '558 Patent is a variant of Claim 36, reducing the "at least three streams of data" to a "first and second data." *See* '558 Patent at Cls. 36, 42. This is not a meaningful limitation on the claim—as Claim 36 is unpatentable, so too is Claim 42. *See supra*.

Claim 52, the last independent claim of the '558 Patent, is a variant of Claim 36 that specifies that the system is "implement[ed] in a wireless communication device." *See* '558 Patent at Cls. 36, 52. Because the wireless communication device is nothing more than generic computer hardware, *see supra* § II, this limitation does not make the abstract idea of Claim 52 patentable. *See Accenture Glob. Servs., GmbH*, 728 F.3d at 1341.

Claim 1 of the '273 Patent is a variant of Claim 1 of the '558 Patent with two additional limitations—it limits the sensor to an accelerometer operating in a 3D coordinate system and specifies that the reference values are in a 2D coordinate system. *Compare* '558 Patent at Cl. 1 *with* '273 Patent at Cl. 1. Neither limitation is material to the eligibility or representativeness analysis. Because the generic "sensors" of the '558 Patent could be accelerometers, *Supra* Part II, the first limitation is already disclosed by the '558 Patent. Additionally, mapping a 3D coordinate system onto a 2D coordinate system in the "performing calculations" step is a routine mathematical

operation that does not transform the abstract idea into patentable subject matter. *Gottschalk*, 409 U.S. at 72; *In re Board of Trustees*, 989 F.3d at 1372–74. Accordingly, Claim 1 of the '273 Patent is directed to the same abstract idea as representative Claim 1 of the '558 Patent.

Independent Claim 12 of the '273 Patent is a variant of Claim 1 of the '273 Patent. It limits the "three steams of data" to a "first and second data" and specifies the calculation step includes "normalizing the second data with the reference data." *Compare* '273 Patent at Cl. 1 *with* '273 Patent at Cl. 12. As explained *supra*, reducing the quantity of data streams and adding a generic calculation does not save the claim from unpatentability.

Independent Claim 22, the last in the '273 Patent, is a variant of Claim 1 that abstracts operations in the "performing calculations" step. Unlike Claim 1, it omits "recognizing a particular set of data . . . as a reference" or "calculating movement data in the 2D coordinate system." *Compare* '273 Patent at Cl. 1 *with* '273 Patent at Cl. 22. While Claim 22 does not specifically cite the rote mathematical operation to perform the calculations in this step, any such calculation would not be patentable. *Gottschalk*, 409 U.S. at 72; *In re Board of Trustees*, 989 F.3d at 1372–74.

### b.    The Dependent Claims are Directed to the Same Abstract Idea

Similarly, nothing in the dependent claims of the Tracking Patents alters the eligibility analysis. These claims simply recite token post-solution limitations or elements performed, at most, by computing elements that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 573 U.S. at 222–23; *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1311 (Fed. Cir. 2016) ("It is therefore well established that 'limiting an abstract idea to one field of use or adding token post solution components [does] not make the concept patentable.'") (citing *Bilski*, 561 U.S. at 612). For example:

- The following claims call for receiving different data in the first step:
  - '558 Patent Cls. 4, 9, 18, 21, 39, 43, 46.
  - '273 Patent Cls. 4, 13, 16.

- The following claims recite specific commonly available sensors:
  - '558 Patent Cls. 29–31, 54–56.

- The following claims call to perform calculations on different generic computing devices:
  - '558 Patent Cls. 13, 16, 25, 50.
  - '273 Patent Cls. 11, 20.

- The following claims recite different mathematical computations performed in the second step:
  - '558 Patent Cls. 2–3, 5–8, 10–12, 14–15, 19–20, 22–24, 28, 32–35, 37–38, 40–41, 44–45, 47–49, 51, 53, 57–60.
  - '273 Patent Cls. 2–3, 5–10, 14–15, 17–19, 23.

- The following claims propose an automated response based on the movement activity after the third step:
  - '558 Patent Cl. 26.

Accordingly, Claim 1 of the '558 Patent is representative of all claims of the Tracking Patents for purposes of § 101 analysis. *See PPS Data, LLC v. Jack Henry & Assocs.*, 2019 WL 1317286, *5 (E.D. Tex. 2019).

      2.    ***Alice* Step One: Claim 1 of the '558 Patent is Directed to the Abstract Idea of Tracking the Movement of a Mobile Thing**

Claim 1 of the '558 Patent is directed to an unpatentable abstract idea because it claims the mere concept of tracking the movement of a "mobile thing." In assessing whether a claim is directed to an abstract idea, courts begin by analyzing the "focus" of the claim: its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Here, the focus of Claim 1 is tracking movement by using traditional sensors and calculations. *See* '558 Patent, Cl. 1. Claim 1 is therefore focused on an abstract idea.

Federal Courts have repeatedly found claims like Claim 1 of the '558 Patent to be unpatentable under *Alice*. For example, in *iLife Technologies, Inc. v. Nintendo of America*, the Federal Circuit held that a claim "directed to a motion detection system that evaluates relative

movement" failed *Alice* Step 1. 839 Fed. Appx. 534, 535–37 (2021). The court determined that the claim amounted to nothing more than "a system capable of sensing information [i.e., receiving data], processing the collected information [i.e., performing calculations with the data], and transmitting processed information [i.e., determining and displaying movement activity]." *Id.* at 536. Even though the patent "recite[d] a physical system that incorporates sensors and improved techniques for using raw sensor data"—which is even more than the '558 Patent purports to do—the Federal Circuit determined that the patent was directed to an abstract idea because it was not "focused on a specific means of method to improve motion sensor systems" or a "physical configuration of sensors." *iLife Technologies, Inc.*, 839 Fed. Appx. at 537.

Similarly, a Florida district court evaluated a claim like Claim 1 of the '558 Patent. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, No. 9:16-cv-81677, Dkt. 74 at 2–3, 6 (S.D. Fla. Oct. 30, 2020). That claim involved the same basic steps as the '558 Patent—"[receiving] input . . . information"; "monitor[ing] the location of a mobile thing"; and delivering notifications—which indicated the claim was directed to an abstract idea. *Id.* at 6. [3] The Federal Circuit called the infringement claim "objective[ly] unreasonable" and referred the case for fee shifting. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1379 (Fed. Cir. 2020). The district court assessed fees against the plaintiff after determining the claim was ineligible under § 101. *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, No. 16-CV-81677, 2020 WL 9440337, at *6 (S.D. Fla. Oct. 30, 2020).

Fees were also awarded after a court in the Central District of California determined claims to be patent ineligible. *Shipping & Transit, LLC v. Hall Enters., Inc.*, 2017 WL 3485782, at *8

---

[3] Indeed, the patent in *Electronic Communication Technologies* has similarities beyond tracking the location of a "mobile thing" using similar steps—that patent shares an inventor and licensing agent with the Tracking Patents.

(C.D. Cal. July 5, 2017). There, the patents involved "maintaining . . . status information" and then "monitoring travel data associated with a vehicle" (i.e., determining movement activity of a mobile thing). *See id.* at *3–*5.[4] That court decided that the claims were directed to the concept of "monitoring . . . the location of a vehicle" and thus drawn to patent-ineligible abstract idea. *Id.*

A claim set was invalidated in *Zendrive*. There, the patent related generally to "combining sensor data to determine vehicle movement information." *Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.*, 2023 WL 4850567, at *1 (D. Del. 2023). The steps mirrored those here: (1) "obtain[ing] 'movement measurements . . . from a movement sensor of a mobile device in a vehicle'" (obtaining data from a mobile thing); (2) "'cross-reference[ing]' the 'movement measurements and the location measurements . . . to remove erroneous measurements'" (performing calculations); and (3) "us[ing]" the "measurements . . . to draw conclusions about the movements or locations" (determining movement activity). *Id.* Because the claims of that patent, like Claim 1 of '558, did not "recite any specific physical configuration of sensors" or any "physical components other than a generic mobile device," the claim disclosing "the selection and manipulation . . . data, its analysis, and reporting the results" was deemed abstract. *Id.* at *6–8.

Courts in this Circuit have come to similar conclusions. For example, in *Specialized Monitoring Sols.*, collecting data using "generic sensors" was firmly "in the realm of abstract ideas." *Specialized Monitoring Sols., LLC v. ADT LLC*, 367 F. Supp. 3d 575, 591 (2019) (quoting *Elec. Power Grp., LLC*, 830 F.3d at 1353). Here also, Claim 1 of the '558 Patent merely discloses collecting data from any of a variety of generic sensors. The '558 Patent is not "directed to an improvement in the functionality of sensors and processors . . . such as collecting previously

---

[4] The patents in *Shipping & Transit*, like the patent in *Electronic Communication Technologies*, share inventors with the Tracking Patents of this suit.

unknown information or collecting information more accurately." *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 2020 WL 13281800, at *3–4 (N.D. Tex. 2020). Neither does the patent "disclose some improvement in the processor [that carries out the calculations] itself, such as faster or more powerful processing." *Id*. Instead, the generic equipment disclosed by the '558 Patent "are merely tools to execute an abstract idea . . . [of] collecting [i.e., receiving], analyzing [i.e., performing calculations with], and transmitting [i.e., determining movement activity from] information." *Id*.

Because the focus of Claim 1 of the '558 Patent is not "on [a] specific asserted improvement in computer capabilities" but instead "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a too," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016), Claim 1 fails the first prong of the *Alice* test.

### 3.    *Alice* Step Two: Claim 1 of the '558 Patent Contains No Inventive Concept Sufficient to Transform the Abstract Idea into Patentable Subject Matter

Claim 1 of the '558 Patent also fails patentability at step two of *Alice* because it does not contain an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018). Such is the case here: Claim 1 of the '558 Patent does not contain an inventive concept sufficient for patentability.

Each of the three steps of Claim 1 uses conventional equipment to perform routine tasks. *iLife Technology* is also illustrative here. The Federal Circuit noted that the motion-detection patent recited "only generic computer components, including a sensor [and] a processor." *iLife Tech, Inc.*, 839 Fed. Appx. at 538. Similarly, the '558 Patent indicates that the sensor and wireless communication device can be any generic computer component. *Supra* Part II. The claims of both

patents do not "recite any unconventional means or method for configuring or processing that information." *iLife Tech, Inc.*, 839 Fed. Appx. at 538. Accordingly, the '558 Patent's Claim 1 "call for sensing and processing [movement] information using generic components does not transform the nature of claim 1 into patent eligible subject matter." *See id.* The Federal Circuit has long held that an implementation reciting the abstract idea itself does not make it patentable. *See, e.g.*, *Elec. Power Group*, 830 F.3d at 1355–56 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").

It matters not that the '558 Patent purports to be "one species" of the "next generation of . . . messaging systems," '558 Patent at 1:64–647—even a new abstract idea is unpatentable under § 101. *See Diamond v. Diehr*, 450 U.S. 175, 188-89, 101 S. Ct. 1048, 67 L. Ed. 2d 155 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possible patentable subject matter.")' *Mayo Collaborative Servs.*, 566 U.S. at 90 ("We recognize that, in evaluating the significance of additional steps, the § 101 patent-eligibility inquiry and, say, the novelty inquiry might sometimes overlap. But that need not always be so."); *Data Engine Techs.*, 906 F.3d at 1011 ("The eligibility question is not whether anyone has ever [performed the method]. That question is one of novelty reserved for §§ 102 and 103. The question of abstraction is whether the claim is 'directed to' the abstract idea itself."); *SAP America*, 898 F.3d at 1163 ("We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility."). Accordingly, the '558 Patent does not clear the second step of the *Alice* test and is therefore unpatentable.

**B.      The Reaction Patents are Ineligible**

The Reaction Patents, like the Tracking Patents, are directed to unpatentable subject matter, and so Plaintiff's infringement claims should be dismissed.

### 1.      Claim 1 of the '914 Patent is Representative of All Claims of the Reaction Patents

First, all claims of the Reaction Patents are represented in Claim 1 of the '914 Patent.

#### a.      The Independent Claims are Directed to the Abstract Idea

To begin, the independent claims of the Reaction Patents are directed to the same abstract idea of surveilling and reacting to one's surroundings. Claim 1 of the '914 Patent recites a system with logic for "determin[ing] a user activity and/or user surroundings" and "facilitat[ing] a user-defined response." *See, e.g.*, '914 Patent at Cl. 1. This method contains the functionally recited steps of (1) capturing information using sensor data (*e.g.*, from a user's cell phone); (2) analyzing the information (*e.g.*, "matching sensor data to at least one algorithm" and "assign[ing] a risk level"); and (3) reacting to that information (*e.g.*, "transmit[ting] surveillance information" and "remotely stor[ing] the surveillance information"). *See* § II, *supra*.

Independent Claim 5 of the '914 Patent is a variant of Claim 1 that removes limitations. *Compare* '914 Patent Cl. 1 *with* Cl. 5. For example, the claim discloses a system that "determines a user activity and/or user surroundings" without describing the "input information" used to make this "determin[ation]." *See* '914 Patent at Cl. 5. Removing the "sensor" specification from Claim 1 does not make Claim 5 less abstract—if anything, it reinforces the conclusion. Claim 5 also removes several reaction capabilities of the system without adding any limitation. *See id.* Accordingly, Claim 5 is directed to the same abstract idea of reacting to one's surroundings.

Independent Claim 15 of the '914 Patent is a method variant of Claim 5 merely describing the method implemented by the system of Claim 5. *Compare* '914 Patent Cl. 5 *with* Cl. 15. As the

system is abstract, so too is the method that does not provide additional limitations. *See CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1289–90 (Fed. Cir. 2013), *aff'd*, 573 U.S. 208 (2014); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1342 (Fed. Cir. 2013).

Claim 1 of the '951 Patent is a variant of Claim 1 of the '914 Patent. The wireless communication device—which, like the portable communication device in '914, may be "a cellular telephone, a smartphone, a tablet with wireless communication capabilities, etc.," '951 Patent at 1:30-33—comprises "one or more memories that store computer code" and "one or more processors." *Id.* at Cl. 1. However, as discussed above, adding generic computer hardware does not remove the claim from the abstract. *See Accenture Glob. Servs., GmbH*, 728 F.3d at 1341.

The claim follows the same functional steps as the abstract claims of the '914 Patent. The device contains "instructions to enter a first mode of operation involving . . . capturing first data with the one or more sensors" (*e.g.*, capturing information), "instructions to determine whether or not the first data is indicative of an activity relating to a user need for assistance, an accident, or a crime" (*e.g.*, analyzing the information), and "instructions to . . . enter into a second mode of operation" (*e.g.*, reacting to the information). '951 Patent at Cl. 1. The claim does not add any new technology, processes, or methodology beyond what is disclosed in the '914 Patent and can be carried out using the same equipment and concepts. Thus, Claim 1 of the '914 Patent is representative of Claim 1 of the '951 Patent.

Independent Claim 10 of the '951 Patent is a variant of Claim 1 that adjusts the analysis step (now, "determine a human body physical activity (HBPA) . . . based upon the data") and the reaction step (now, "select a mode of operation from a set of modes" and "communicate the data to a remote computer system"). '951 Patent at Cl. 10. However, these are still generic processes carried out by generic computer hardware that do not limit the claim. Claim 10 is still directed to

the abstract idea of reacting to one's surroundings and so Claim 1 of the '914 Patent is representative of Claim 10 of the '951 Patent.

> **b.      The Dependent Claims are Directed to the Same Abstract Idea**

Nothing in the Reaction Patents' dependent claims alters eligibility analysis. These claims simply recite token post-solution limitations or elements performed, at most, by conventional computing elements merely requiring "a generic computer to perform generic computer functions." *Alice*, 573 U.S. at 222–23; *Amdocs (Israel) Ltd.*, 841 F.3d at 1311. For example:

- The following claims call for capturing different information in the first step:
  - '914 Patent Cl. 2.

- The following claims recite ways to analyze the information in the second step:
  - '914 Patent Cls. 7, 10, 17, 20.
  - '951 Patent Cls. 3–4, 8–9.

- The following claims call for a different response in the third step:
  - '914 Patent Cls. 2, 4, 6, 8–9, 11, 13–14.
  - '951 Patent Cls. 5–7.

- The following claims propose transmitting the information:
  - '914 Patent Cls. 3, 12.
  - '951 Patent Cls. 3–4.

Accordingly, Claim 1 of the '914 Patent is representative of all claims of the Reaction Patents for purposes of § 101 analysis. *See PPS Data, LLC*, 2019 WL 1317286, *5 (E.D. Tex. 2019).

> **2.      *Alice* Step One: Claim 1 of the '914 Patent is Directed to the Abstract Idea of Reacting to One's Surroundings**

Claim 1 of the '914 Patent is directed to an unpatentable abstract idea because it claims the mere concept of reacting to one's surroundings. In assessing whether a claim is directed to an abstract idea, courts begin by determining the "focus" of the claim: its "character as a whole." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d at 1167. Here, the focus of Claim 1 is to observe, analyze,

and react to one's surroundings using traditional sensors and equipment. *See* '914 Patent, Cl. 1. Claim 1 is therefore focused on an abstract idea.

Federal Courts have repeatedly found claims like Claim 1 of the '914 Patent to be unpatentable under *Alice*. Patents are directed to an abstract idea if they merely automate a process that "can be performed in the human mind, or by a human using pen and paper." *Cyber Source Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *see also Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). For example, in the Federal Circuit has held that a machine-learning claim failed *Alice* step one because capturing information ("a collecting step"), analyzing the information ("identifying relationships within the data"), and reacting to the information ("generating an optimized schedule" and "iteratively generating new, further optimized schedules") was directed to an abstract idea. *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1208, 1213–14 (Fed. Cir. 2025). The computers claimed were "invoked merely as a tool" to "perform a task previously undertaken by humans with greater speed and efficiency." *Id.* at 1214 (cleaned up). Similarly, a human could carry out the abstract steps of Claim 1 of the '914 Patent by capturing information (*e.g.*, observing a situation), analyzing the information (*e.g.*, evaluating the risk posed), and reacting to the information (e.g., moving out of the way of danger). So, the claim is directed to an abstract idea. In fact, the '914 Patent itself discloses examples of people practicing the abstract idea. The patent describes "observing individuals when walking to and from parking lots." '914 Patent at 2:7-15. These individuals, when they "enter unsafe or unknown environments" (observing information) may "feel[] uneasy, scared or potentially endangered" (analyzing the information) and subsequently "use their wireless communication device to call and talk to . . . other people" (reacting to the information). *Id.* The '914 Patent does nothing beyond automating this process via generic computer components behaving conventionally.

Similarly, in the final written decision of *Profrac Holding Corp et al. v. Halliburton Energy Services Inc*, the PTAB determined claims involving the steps of "receiving . . . data," "selecting a representative model based on the . . . data," and "controlling a[] . . . pump based on the [model]" failed the first prong of *Alice*. PGR2023-00023, at 10–11 (Oct. 29, 2024). The PTAB noted "a technician may review sensor data" and "manually select[]" a response model "based on observed sensor data." *Id.* at 9–10. Further, "controlling a[] . . . pump based on the representative system model" (*i.e.*, reacting to the information) could be "performed via a generic computer." *Id.* at 11. So, the claims there recited automating a mental process, as does Claim 1 of the '914 Patent.

Claim 1 of the '914 Patent is thus directed to an abstract idea and fails the first *Alice* step.

### 3. *Alice* Step Two: Claim 1 of the '914 Patent Contains No Inventive Concept Sufficient to Transform the Abstract Idea into Patentable Subject Matter

Claim 1 of the '914 Patent also fails step two of *Alice* because it does not contain an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). All three steps of the claim "are each themselves abstract, being mental processes akin to data collection or analysis. Considered as an ordered combination, these three steps merely repeat the abstract idea." *In re Rudy*, 656 F.3d at 1385; *see also Recentive Analysis*, 134 F.4[th] at 1214–15; *Electric Power Group, LLC*, 830 F.3d at 1354–55 ("merely selecting information, by content or source, for collection, analysis, and [reaction] does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas"); *see also ChargePoint, Inc.*, 920 F.4d at 773–74.

Each of the three steps of Claim 1 uses conventional equipment to perform routine tasks. As explained *supra*, the patent claims generic computer devices. The "portable communication device" can be any device, for example, a "Cell Phone, Wireless PDA, etc.," that is capable of

gathering information, which may comprise "GPS, accelerometer (or other motion device), readings, time, camera (or video), and audio (among others)." '914 Patent at 6:52-55. The devices are not combined or used in novel ways, and the patent does not improve their functionality. As explained by the Federal Circuit in *BSG Tech, LLC*, applying the claim using these "conventional and well-understood techniques" is insufficient to "transform[]" the claim "into a patent-eligible application of an abstract idea." 899 F.3d at 1290–91. Accordingly, Claim 1's call for capturing information, analyzing information, and responding to information does not transform the nature of Claim 1 into patent-eligible subject matter.

### C. The Issue of Patent Eligibility is Ripe

Patent eligibility under 35 U.S.C. § 101 is ripe for consideration on the pleadings because is a threshold legal issue. *Bilski*, 561 U.S. at 602. Accordingly, the § 101 inquiry is properly raised at the pleadings stage when is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring).

The Court need not credit Plaintiff's conclusory allegations of inventiveness. *See Simio, LLC v. Flexsim Software Prods.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) ("[A]llegation[s] about inventiveness, wholly divorced from the claims or the specification, do[] not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." (internal quotations omitted)). Nor are there any factual disputes here about novelty or unconventionality that preclude resolution—claims that simply apply the underlying abstract idea, like Claims 1 of the '558 Patent and the '914 Patent, do not require investigations of conventionality. *BSG Tech*

*LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018) ("[T]he only alleged unconventional feature . . . simply restates what we have already determined is an abstract idea.").

Finally, the Court need not undertake claim construction before the § 101 analysis. *Bancorp Servs. LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."); *Content Extraction & Transmission LLC v. Wells Fargo Bank. Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). No proposed construction can alter the fact that the plain language of Claim 1 of the '558 Patent and Claim 1 of the '914 Patent are directed to abstract ideas. Thus, the ineligibility of the Asserted Patents is ripe for consideration on the pleadings alone.

## V.    CONCLUSION

For these reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Defendant requests dismissal with prejudice.

Dated: October 27, 2025                                    Respectfully submitted,

                                    By:   *Ricardo J. Bonilla*
                                          Neil J. McNabnay
                                          Texas Bar No. 24002583
                                          mcnabnay@fr.com
                                          Ricardo J. Bonilla
                                          Texas Bar No. 24082704
                                          rbonilla@fr.com
                                          Alexander H. Martin
                                          martin@fr.com
                                          Texas Bar No. 24091828
                                          FISH & RICHARDSON P.C.
                                          1717 Main Street, Suite 5000
                                          Dallas, TX 75201
                                          (214) 747-5070 (Telephone)
                                          (214) 747-2091 (Facsimile)

                                    **COUNSEL FOR DEFENDANT
                                    GEOMETRIS LP**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on October 27, 2025, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

                                    */s/ Ricardo J. Bonilla*
                                    Ricardo J. Bonilla